# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERNEL MILITY. | Case No.: 1:17-cv-0446 - JLT |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | (Doc. 50) |
| COUNTY OF KERN, et al. | |
| Defendants. | |

Kernel Mility is an African American male who was employed by County of Kern. He asserts that during his employment with the County, he suffered discrimination and harassment from several coworkers and his supervisor, including Chris Rodriguez, Phil Taylor, Richard Carillo, and Dave Langella. (*See generally* Doc. 43)

Chris Rodriguez seeks the dismissal of Plaintiff's claims stated against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 50) Because the Court concludes the First Amended Complaint includes sufficient factual allegations to support the claims challenged by Rodriguez, the motion to dismiss is **DENIED**.

## I.     **Background and Relevant Allegations**

Plaintiff was employed by the County as a maintenance worker from August 2015 to August 2016. (Doc. 43 at 1, ¶ 3) He asserts that he "was a 'nine month' employee, which means he works nine months, is off two months, then begins a new 'nine month' shift." (*Id.* at 2, ¶ 8) According to Plaintiff,

1

throughout the course of his employment he suffered harassment from several coworkers, including Rodriguez. (*Id.*, ¶ 9)

For example, Plaintiff asserts that on December 21, 2015, "Rodriguez told Plaintiff that he was going to be lost because another employee with whom Plaintiff worked and was friendly (named Dave Sierra) was not present." (Doc. 43 at 2, ¶9(A)) Plaintiff alleges that Rodriguez asked, "who hired this nigger?" while referring to Plaintiff. (*Id.*) Plaintiff reports, "Rodriguez then stated 'this nigger won't last.'" (*Id.*) The same date, Rodriguez "referred to Plaintiff in Spanish as a nigger" and called Sierra "a 'nigger lover' in Spanish." (*Id.* at 2-3, ¶ 9(A)) Plaintiff contends Rodriguez continued to "refer[] to [Plaintiff] as a nigger on other occasions, including at least … weekly by Rodriguez," who did so in the presence of Plaintiff. (*Id.* at 3, ¶9(B))

Plaintiff reports that he "complained continuously (at least fifteen times)" to his supervisor Taylor concerning the comments of Rodriguez and other coworkers. (Doc. 43 at 3, ¶9(B)) According to Plaintiff, Taylor responded by telling "Plaintiff that the employees in the department have used the word nigger loosely and are not used to having a black guy work with them." (*Id.*, ¶ 9(C)) Plaintiff alleges, "Defendant Taylor also promised Plaintiff it would be handled but Taylor never caused the harassing conduct to stop." (*Id.*) Plaintiff alleges that he gave Taylor a written statement after the harassment by Rodriguez, and "Taylor was later witnessed placing the statement[] in a bin to be shredded." (*Id.* at 5-6, ¶10(E)) However, the statement was retrieved from the shredding bin by another employee. (*Id.* at 6, ¶10(E))

After finding trash left on his desk in May 2015, Plaintiff "complained to Human Resources by dropping off written statements to the receptionist in the County's Human Resources department." (Doc. 43 at 6, ¶12) Plaintiff reports these statements included "allegations of racial harassment suffered by Plaintiff." (*Id.*) According to Plaintiff, "Shortly thereafter, Debbie Davis from the County Human Resources Department contacted Plaintiff about the documents he dropped off and he told her what he had been experiencing, including being referred to as a nigger." (*Id.*) Plaintiff asserts Ms. Davis "initiated an investigation by an investigator for the County." (*Id.*)

Plaintiff asserts Ms. Davis informed Plaintiff that "he would be returning to work after his two months off work." (Doc. 43 at 7, ¶ 17) In addition, Plaintiff alleges that "Cindy Uetz, the deputy

director of the department also assured Plaintiff he would be returned to work after his two months off." (*Id.*) However, "Plaintiff was never called to return to work after two months." (*Id.* at 7) When Plaintiff contacted Ms. Davis, "she informed Plaintiff the investigation was still ongoing and this was why he was not returned to work after two months." (*Id.*) Therefore, Plaintiff's last day of work with the County "was on or about October 16, 2016."

Based upon the foregoing allegations, Plaintiff contends Rodriguez is liable for harassment in violation of 42 U.S.C. § 1981 and California's Fair Employment and Housing Act. (Doc. 43 at 9-10) Plaintiff's First Amended Complaint also includes a prayer "[f]or punitive damages against the individual defendants," including Rodriguez. (*Id.* at 16) On June 15, 2018, Rodriguez filed the motion to dismiss now pending before the Court, asserting the facts alleged fail to support Plaintiff's claims or request for punitive damages. (*See* Doc. 50) Plaintiff filed his opposition to the motion on July 9, 2018. (Doc. 51) Rodriguez did not file a reply.

The Court reviewed the papers filed with the pending motion and determined the matter was suitable for decision without oral arguments. Accordingly, the matter was taken under submission pursuant to Local Rule 230(g). (Doc. 54)

**II.     Pleading Requirements**

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of a complaint is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action

will not do. Nor does a complaint suffice if it tenders naked assertions devoid of
further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

**III.    Motions to Dismiss**

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

**IV.    Discussion and Analysis**

Rodriguez seeks dismissal of the fourth and fifth causes of action raised by Plaintiff in the First Amended Complaint, asserting the claims are "procedurally and factually deficient." (Doc. 50 at 2) In

addition, Rodriguez asserts Plaintiff "failed to state sufficient facts upon which punitive damages may be awarded against [Rodriguez]." (*Id.* at 3)

### A. Fourth Claim for Relief: Discrimination under 42 U.S.C. § 1981

Plaintiff alleges the conduct of Rodriguez "violated 42 U.S.C. 1981 and that statute entitles Plaintiff to a remedy against Defendant Rodriguez." (Doc. 43 at 9, ¶ 40) Specifically, 42 U.S.C. § 1981 ("Section 1981") provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In addition, "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.*, § 1981(c).

Rodriguez notes the Court found Plaintiff's original complaint was "devoid of any factual allegations of what defendant Rodriguez's official role or capacity was while working for the County." (Doc. 50-1 at 7, quoting Doc. 41 at 5) According to Rodriguez, "the Fourth Claim For Relief in the FAC remains equally devoid of any substantial factual allegation.") Further, Rodriguez asserts that even assuming he uttered racial slurs "there are no facts alleged which objectively support the allegation that [Rodriguez] was acting under color of law when the alleged racial slurs were spoken in the workplace." (*Id.*) He argues that Plaintiff "has not stated a cognizable claim" because "there are no facts alleged which objectively support the allegation that was acting under color of law when the alleged racial slurs were spoken in the workplace." (*Id.* at 9)

#### 1. Claim under Section 1981 against an individual

The Ninth Circuit has not conclusively concluded that Section 1981 imposes liability upon an individual. However, several other circuit courts have determined individuals may be held liable for violations of rights provided under Section 1981. *See, e.g.*, *Tolbert v. Smith*, 790 F.3d 427, 434 n.3 (2d. Cir. 2015) ("Section 1981 provides for individual liability"); *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d. Cir. 1986) ("employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by 42 U.S.C. § 1981, regardless of whether

the corporation may also be held liable"); *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986) (holding that "the law is clear that individuals may be held liable for violations of § 1981"); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985) (recognizing that individual liability may be imposed under Section 1981).

Courts within the Ninth Circuit have also determined that Section 1981 gives rise to individual liability. *See, e.g.*, *Lelaind v. City & County of San Francisco*, 576 F.Supp.2d 1079, 1089 (N.D. Cal. 2008) ("with respect to the individual defendants … they may be individually liable under sections 1983 and 1981"); *Kaulia v. County of Maui*, 504 F.Supp.2d 969, 981 (D. Hawaii 2007) (observing an individual may be held liable under Section 1981 when the individual "personally participate[d] in the discriminatory acts"); *Carrea v. California*, 2009 WL 1770130, at *5 (C.D. Cal. Jun. 18, 2009) (also recognizing individual liability under Section 1981).

Significantly, unlike a claim brought under 42 U.S.C. § 1983, a § 1981 claim does not require the individual act under color of state law. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1137 (9th Cir. 2000) (stating Section 1981 "has been interpreted to prohibit not only discriminatory government interference with private contracts but purely private discrimination in contracts"). As the Second Circuit explained, "Section 1981 was amended by Section 101 of the Civil Rights Act of 1991 to provide that 'the rights protected by this section are protected against impairment by nongovernmental discrimination *and* impairment under color of State law.'" *Anderson v. Conboy*, 156 F.3d 167, 170 (2nd Cir. 1998) (emphasis added). With this amendment, Section 1981 rights were protected against both private actors and state actors, whether the actions were taken in their official capacity. *Id.*; *see also Ballard v. Tri-County Metro. Transp.*, 2011 WL 1337090, at *20 (D. Ore. Apr. 7, 2011) ("courts in this circuit have held that a plaintiff may bring a Section 1981 claim against a state actor in his individual capacity"). Thus, Plaintiff is not required to allege facts supporting the conclusion that Rodriguez acted under color of law for a Section 1981.

The Court's prior analysis concerning whether the facts alleged supported the conclusion that Rodriguez acted under color of state law—which related to Plaintiff's claim under 42 U.S.C. § 1983 (*see* Doc. 41 at 4-5)— has no bearing on Plaintiff's ability to state a claim under Section 1981. Because Plaintiff is able to state a claim for "nongovernmental discrimination" against an individual

under Section 1981, Defendant's motion to dismiss the fourth cause of action, on the grounds that Plaintiff fails to demonstrate Rodriguez was working under color of law, is **DENIED**.

### 2. Sufficiency of Plaintiff's factual allegations

Employment contracts are subject to Section 1981 and, as a result, an individual "may bring a hostile work environment discrimination claim under 42 U.S.C. §1981." *Manatt v. Bank of America, NA*, 339 F.3d 792, 797 (9th Cir. 2003). As the Ninth Circuit explained, "A hostile work environment interferes with the 'enjoyment of all benefits . . . and conditions of the contractual relationship' of employment and is therefore actionable" under Section 1981. *Id.*

To state a cognizable claim for a hostile work environment under Section 1981, a plaintiff must allege: "(1) [he] was subjected to verbal or physical conduct because of [his] race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Manatt*, 339 F.3d at 799 (internal quotation marks omitted); *see also Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 686 (9th Cir. 2017) (identifying these factors as applying to hostile work environment claims under both Section 1981 and Title VII). The facts alleged must support a conclusion that "the conduct at issue was both objectively and subjectively offensive," such that "a reasonable person would find the work environment to be 'hostile or abusive,' and that [the plaintiff] in fact did perceive it to be so." *Dawson v. Entek Int'l*, 630 F.3d 928, 938 (9th Cir. 2011) (citation omitted).

Plaintiff alleges Rodriguez referred to Plaintiff several times on December 21, 2015 in a racially derogatory manner when questioning who hired Plaintiff and stating, "this nigger won't last." (Doc. 43 at 2, ¶9(A)). Plaintiff asserts, "Rodriguez continued to "refer[] to [Plaintiff] as a nigger on other occasions, including at least … weekly by Rodriguez," in the presence of Plaintiff. (*Id.* at 3, ¶9(B)) Further, the conduct was clearly unwelcome to Plaintiff, who reported the comments of Rodriguez to his supervisor and reported the conduct to the County's Human Resources Department. (*Id.*, ¶¶ 9(B), 12)

Significantly, the Ninth Circuit has recognized that the word "nigger" is a "racially derogatory name[]," the usage of which may can a claim under Section 1981. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1118 (9th Cir. 2004).

Thus, given the clear racial animus of the term (*Id*. at 1116)—which is both subjectively and objectively offensive—and the frequency with which Plaintiff alleges it was used by Rodriguez, the Court finds the facts alleged are sufficient to support a claim under Section 1981. Thus, Defendant's motion to dismiss the fourth claim for relief, on the grounds that the First Amended Complaint was "factually deficient," is **DENIED**.

### B. Fifth Claim for Relief: Harassment in violation of FEHA

Plaintiff alleges Rodriguez is liable for a violation of California's Fair Employment and Housing Act, which "prohibits harassment on the basis of race." *Harris v. City of Fresno*, 625 F.Supp.2d 983, 1013 (E.D. Cal. 2009) (citing *Dee v. Vintage Petroleum, Inc.,* 106 Cal. App. 4th 30, 35 (2003)). Specifically, FEHA provides: "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or State of California: For an employer... or any other person, because of race... to harass an employee." Cal. Gov't Code §12940(j)(1). In addition,

> An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

Cal. Gov't Code §12940(j)(3). Thus, FEHA's provisions "indisputably express" the California Legislature's "intent to impose individual liability on employees who harass." *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1186 (2008).

Harassing acts under FEHA include "conduct outside the scope of necessary job performance . . . presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Pinder v. Empl. Dev. Dep't*, 227 F.Supp.3d 1123, 1143 (E.D. Cal. 2017) (quoting *Reno v. Baird*, 18 Cal. 4th 640, 646 (1998)). In evaluating harassment claims arising under FEHA, "California courts have been guided … by the federal court decisions interpreting Title VII." *Dee*, 106 Cal.App.4th at 35. Consequently, similar to a racial harassment claim arising under Section 1981, to state a claim for harassment in violation of FEHA, a plaintiff must allege: "(1) that he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the

conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Harris*, 625 F.Supp.2d at 1013 (citation omitted); *see also Lawler v. Montblanc North America, LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (holding a Plaintiff states a prima facie case for a violation of FEHA where "(1) [Plaintiff] is a member of a protected group; (2) [Plaintiff] was subjected to harassment because [Plaintiff] belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment").

Rodriguez contends Plaintiff fails to state a claim under FEHA because the allegations in are "replete with mere conclusory and equivocal arguments." (Doc. 50-1 at 3) (emphasis omitted). According to Rodriguez,

> At paragraph 45 MILITY again simply states: "The Harassment created a hostile work environment for Plaintiff." Again, at paragraph 48, MILITY repeats the same conclusory and equivocal argument, devoid of any facts, that: "The conduct of defendant Rodriguez in engaging in the Harassment involved an unlawful intent to discriminate against Plaintiff based on his race and/or involved a reckless disregard for his constitutionally protected rights under the Equal Protection Clause, entitling Plaintiff to punitive damages against defendant RODRIGUEZ for his conduct."

(Doc. 50-1 at 3) (emphasis omitted) In addition, Rodriguez asserts that "paragraphs 45 and 48 [in the First Amended Complaint] are mirror images of paragraphs 27 and 30 of the original Complaint, which this Court already held to be inadequate in its Order Granting Defendant Rodriguez's Motion To Dismiss With Leave To Amend." (*Id.*)

Importantly, Rodriguez appears to ignore the fact that Plaintiff "repeats and realleges all prior allegations" in support of his claim for a violation of FEHA. (Doc. 43 at 9, ¶ 44) As discussed above, Plaintiff alleges that he is an African-American, and that Rodriguez used racially derogatory terms at least once a week. (*Id.*, ¶¶ 9(B), 46) Previously, this Court explained that "[t]he use of this racial slur alone is sufficient to show that defendant's conduct was motivated by a racial animus." (Doc. 41 at 7) Contrary to Rodriguez's assertions, the Court did not find the allegations related to the *harassment* were insufficient to support a claim. Instead, the Court determined only that Plaintiff failed to state a claim for a violation of the Equal Protection Clause because Plaintiff failed to allege "a nexus … between defendant Rodriguez's alleged conduct and his role as an employee for Kern County." (*Id.* at 6)

Because the facts alleged support the conclusions that Plaintiff was a member of a protected

9

class, subjected to unwelcome verbal conduct because of his race, and the conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment," Plaintiff has stated a cognizable claim for harassment by Rodriguez in violation of FEHA. *See Harris*, 625 F.Supp.2d at 1013; *Lawler, LLC*, 704 F.3d at 1244. Defendant's motion to dismiss the fifth claim for relief is **DENIED**.

### C. Prayer for Punitive Damages

Rodriguez asserts that Plaintiff fails to allege facts supporting a prayer for punitive damages. (Doc. 50-1 at 11) , Rodriguez observes that the Supreme Court of the United States held that "[p]unitive damages may be available in a proper 42 U.S.C.S., Section 1983 case… only on a showing of the requisite intent." (*Id.*, quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986)) In addition, he observes that punitive damages under California law require a showing of "malice in fact, that is the motive and willingness to vex, harass, annoy, or injure." (*Id.* at 13, quoting G. D. *Searle & Co. v. Superior Court*, 49 Cal. App.3d 22, 29 (1975) (emphasis omitted)) According to Rodriguez, "the body of the FAC fails to set forth the requisite facts demonstrating that he either willfully and intentionally violated [Plaintiff's] civil rights or was motivated by a callous indifference to [Plaintiff's] federally protected rights so as to allow a jury to consider awarding punitive damages." (*Id.*)

As an initial matter, the fourth claim for relief is raised under Section 1981, not Section 1983. (*See* Doc. 43 at 9) "An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including…, under circumstances, punitive damages." *Johnson v. Railway Express Agency*, 421 U.S. 454, 460 (1975); *see also Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 928 (9th Cir. 1982).

The Supreme Court determined in *Smith v. Wade*, 461 U.S. 30 (1983), that punitive damages may be awarded when the defendant acts with "evil motive or intent" or with "callous or reckless disregard for the federally protected rights of others." *Id.* at 54. Although *Smith* addressed punitive damages under Section 1983, it has been cited by circuit courts as setting the standard for Section 1981 cases. *See, e.g.*, *Woods v. Graphic Communications*, 925 F.2d 1195, 1204 (9th Cir. 1991); *Williamson v. Handy Button Mach*. Co., 817 F.2d 1290, 1296 (7th Cir. 1987) (recognizing *Smith* was "a case decided under § 1983, but equally applicable to § 1981"); *Jackson v. Pool Mortgage Co*., 868 F.2d

1178, 1181 (10th Cir. 1989) (holding it was an error, though harmless in this case, to apply state punitive damages law to an award under Section 1981, because "*federal* standards govern the determination of punitive damages under federal civil rights statutes") (emphasis in original). Thus, to Plaintiff must allege facts sufficient to support a conclusion that Rodriguez acted with an "evil motive or intent" *or* with "callous or reckless disregard" for Plaintiff's federally-protected rights.

Significantly, the Ninth Circuit determined that an award of punitive damages was appropriate when a plaintiff was repeatedly subjected to "abuse featuring the word 'nigger.'" *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001). The Court observed the word is "perhaps the most offensive and inflammatory slur in English [and] a word expressive of racial hatred and bigotry." *Id.* (quotation omitted); *see also McGinest*, 360 F.3d at 1118 (finding the word is "highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination). Given the offensive and degrading nature of the use of the word—and the frequency with which Rodriguez used it— Plaintiff's allegations support a conclusion that Rodriguez acted with "an evil motive or intent" and disregard of Plaintiff's right to be free from harassment under Section 1981. Consequently, the motion to dismiss the prayer for punitive damages is **DENIED**.

**V.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**: Defendants' motion to dismiss (Doc. 50) is **DENIED**.

IT IS SO ORDERED.

Dated:  **August 6, 2018**               **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE

11